## DECLARATION of JED RZEGOCKI

I, Jed Rzegocki, do hereby declare:

### BACKGROUND/EXPERIENCE

1. I am a Detective with the Oregon State Police Drug Enforcement Section. I have been employed as an Oregon State Police Officer since July 1997. Further, as part of the Oregon State Police Drug Enforcement Section, I am assigned to the Oregon-Idaho High Intensity Drug Trafficking Area (HIDTA) Interdiction Team. I completed my initial Oregon State Police training at the Oregon State Police Basic Officer Academy, in Warrenton, Oregon in 1997, where I learned the skills necessary to conduct state criminal investigations, including investigating crime scenes, interviewing witnesses and suspects, and writing reports and affidavits. I am also cross designated as a Task Force Officer with the Department of Homeland Security (DHS), Homeland Security Investigations (HSI) and have been a Task Force Officer (TFO) with HSI since March 2018. As it relates to HSI, I am currently assigned to the Resident Agent in Charge (RAC) Office located in Medford, Oregon. In March 2018, I attended the HSI Task Force Officer Training in Seattle, Washington, which covered various topics including federal-level criminal investigations incorporating money laundering investigations, drug investigations, and evidence handling. During my tenure as a state and federal Task Force Officer, I have investigated and/or participated in hundreds of investigations of money laundering, narcotics trafficking, homicide, theft, burglary, and various other types of criminal investigations. I have also acquired knowledge and information about the illegal drug trade and the various means and methods by which it is furthered from formal and informal training, other law enforcement officers and investigators, informants, individuals I have arrested and/or interviewed, and my participation in other investigations.

**Declaration of Jed Rzegocki**                                                                                              **Page 1**

2.  I have participated in searches of vehicles and premises and assisted in evidence gathering by means of search warrant and consent. I have received training in investigating money laundering and have had the opportunity to study and investigate numerous examples of money laundering schemes specifically pertaining to the laundering of drug proceeds. I have received training from the Oregon State Police and HSI regarding asset forfeiture and financial investigations as well as training at conferences.

3.  I have participated in hundreds of investigations at the federal and state levels. These investigations have pertained to narcotics trafficking and laundering drug proceeds as well as a variety of criminal activities including bulk cash smuggling, drug trafficking, possession/manufacture/distribution of various amounts of marijuana, methamphetamine, cocaine, heroin, ecstasy, LSD, prescription pills and psilocybin mushrooms.

## PURPOSE OF THIS DECLARATION

4.  This declaration is submitted in support of a civil complaint *in rem* for forfeiture of $19,000 in U.S. currency seized from Brendan Werner during a traffic stop on July 29, 2020, on State Route 140E (SR-140E) in the vicinity of milepost 87 in Lake County, Oregon. As discussed below, I believe there is probable cause to believe that the $19,000 is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), as it constitutes moneys intended to be furnished by any person in exchange for a controlled substance or the proceeds traceable to an exchange of controlled substance in violation of 21 U.S.C. § 841, specifically marijuana, a schedule I controlled substance, or moneys used or intended to be used to facilitate any violation of 21 U.S.C. § 841(a)(1), specifically the manufacture and distribution of marijuana.

5.  The following information is derived from my personal observation, interviews, and review of physical evidence as well as review of reports generated by other law enforcement

**Declaration of Jed Rzegocki**                                                                                              Page 2

officials and discussions with other investigators who have personal knowledge of the matters covered in those reports, and from conversations with persons who have personal knowledge of the events described herein. I have not included all the details of the investigation, only those facts that I believe necessary to demonstrate a probable cause to proceed with civil forfeiture of the $19,000.

6. I know from my training and experience that Oregon legalized the production and sale of marijuana and that marijuana remains illegal in many U.S. States. Marijuana grown in Oregon sells for far less in Oregon than it sells for in states where it remains illegal. In my training and experience, I have found it common for marijuana grown in Oregon to be transported to or sold in other states, via the "Black Market" often for cash. I am also aware that the production of hemp is regulated in Oregon and that it is common to claim what appears to be cash associated with the sale of marijuana is derived from the sale of regulated hemp. I am also aware marijuana sells for significantly more than legal hemp and that because hemp is legal, these sales are typically documented like any other legal or regulated product.

### SUMMARY OF THE INVESTIGATION

7. On July 29, 2020, at approximately 12:31 PM, Oregon State Police (OSP) Trooper Brennon Pilon was working in a marked OSP patrol car traveling eastbound, on SR 140 near mile post 89. Trooper Pilon observed a westbound gray Hyundai Tucson sports utility vehicle (SUV) Missouri license plate LB7L5Y approaching him; as the vehicle neared, Trooper Pilon watched the vehicle travel over the solid white fog line by approximately one (1) foot, which is a violation of Oregon law. He initiated a traffic stop.

8. I have worked with Trooper Pilon on numerous investigations stemming from his traffic stops that specifically included bulk marijuana smuggling coming from the Southern

Oregon (Medford, Grants Pass, Cave Junction, etc.) as well as persons transporting bulk US currency to facilitate the purchase and illegal export of bulk marijuana to other states where marijuana can be sold at a significant profit.

9. During the stop, Trooper Pilon approached the passenger side of the vehicle. During conversation regarding the traffic violation, Trooper Pilon asked the driver if he was looking at his GPS, and the driver agreed. The driver said he was not too tired to drive. Trooper Pilon noted the GPS was directing the driver to Medford, Oregon. When asked for his driver's license, vehicle insurance, and registration, the driver provided a Nebraska driver's license identifying him as Brendan Werner, the lone occupant of the vehicle. Werner provided a Hertz rental agreement which showed the vehicle rental date of July 28, 2020, at 10:39 a.m., the day before the stop. While Werner was looking for his insurance, Trooper Pilon asked where Werner was traveling from. Werner stated he was coming from Nebraska, headed to Medford as he has family there. The due date for the vehicle return was listed as July 31, 2020 at 11:00 a.m., and Trooper Pilon knew it was over a 1,400-mile trip to Nebraska. Since the vehicle was due back on July 31, at 11:00 a.m., Trooper Pilon believed it did not make sense that Werner would drive all this way to spend less than 24 hours with family. This left very little, if any time, for any vacation, sight-seeing, or visiting family. Werner first said he did not know the address of his family, then stated it was in Central Point, Oregon. Trooper Pilon stated he noted a small black suitcase in the back of the vehicle, a blanket and two pillows. Trooper Pilon also noted what he described as 'gas station food' on the front seat.

10. I know through my training and experience and from previous cases I have worked involving marijuana, marijuana smuggling, and bulk cash smuggling, smugglers will often rent vehicles for a few days and drive extreme distances to purchase drugs and then return with

**Declaration of Jed Rzegocki**                                                                 **Page 4**

narcotics, such as marijuana. Smugglers will often sleep in their vehicles to save time and money by sleeping only when necessary. My experience is that SUVs are commonly rented for excess cargo or multiple passengers, but this driver was alone with minimal luggage. I know rental vehicles are commonly used for marijuana trafficking for a variety of reasons to include defeating license plate readers (LPR's), reliable transportation, and not risking involvement of a personally owned vehicle (POV) in the trafficking of narcotics or bulk cash. SUVs are generally more expensive to rent than compact/economy cars, generally not as fuel efficient, and generally not chosen for cross-country trips for single occupants with minimal luggage. Furthermore, SUVs are commonly utilized for bulk marijuana smuggling for the cargo space.

      11. I know SR 140 leads to areas of Oregon that are major source areas of marijuana and southern Oregon produces bulk marijuana and produces more marijuana than Oregon citizens can consume. I am familiar with various other marijuana products such as marijuana extract being produced in large quantities in these same areas. I know most of this marijuana leaves the State of Oregon, via the black market. I know marijuana can be produced annually in the Southern Oregon area, and that marijuana will continue to be sold and trafficked throughout the summer. I know illicit indoor marijuana grows produce marijuana year-round and can be unlawfully exported via the highway system. I know SR 140 is one of the more commonly used highways by persons trafficking illegal marijuana, as it is the suggested route on GPS to travel to and from many of the source/destination areas. I know, typically speaking, large amounts of U.S. currency travel west on SR 140 in order to purchase bulk marijuana, and bulk marijuana travels east to the destination areas. I know drug smugglers will often bring suitcases, backpacks, duffle bags to conceal currency being brought to Oregon and then same items for secreting contraband on the return trip.

**Declaration of Jed Rzegocki**                                                                                                    **Page 5**

12. Trooper Pilon confirmed with Werner he was the one who rented the vehicle, that it was rented the day prior (July 28, 2020), and that it was due to be returned on Saturday or Sunday (August 1 or 2). Trooper Pilon pointed out that this was a quick trip, and Werner replied he was just going to hang out. Trooper Pilon, faced with the totality of the circumstances, believed Werner was transporting a large amount of U.S. currency to purchase black market marijuana and unlawfully export it out of the State of Oregon.

13. Trooper Pilon went back to his vehicle and performed law enforcement checks on Werner and requested Oregon State Police Patrol Sergeant Scott Hill to assist on his traffic stop. Law Enforcement checks revealed Werner had a valid license and was not wanted.

14. Upon Trooper Pilon's re-approach of Werner, he learned Werner was finally able to produce insurance information. Trooper Pilon said that since the vehicle was due back July 31st, which meant Werner was only going to be there for one day, which did not make sense to Trooper Pilon. Werner said he planned on staying a couple of days. Trooper Pilon briefly explained to Werner he suspected he was heading to Medford to purchase bulk marijuana, which Werner denied. Werner admitted he was sleeping in the vehicle to save money. Trooper Pilon again confronted Werner about traveling to Oregon to purchase marijuana; Werner responded he was going to visit friends, which was contradictory to his earlier statement that he was visiting family. Trooper Pilon asked Werner for the address to make sure there was not a big marijuana grow at the location, Werner denied the request, telling Trooper Pilon he (Trooper Pilon) was a stranger to him. Werner then provided the address of "750 E Gregory Road". Trooper Pilon confronted Werner about the friends vs family statement, and Werner then said he was going to visit both. In response to Trooper Pilon's question, Werner said he has not lived in Oregon. He further stated, while looking down at the ground, his mother is from Oregon. Trooper Pilon went

back to his patrol car and used Google Maps for the provided address, and he could see there was an apparent marijuana grow using the satellite view.

15.  Sergeant Hill arrived at the stop location and spoke with Werner, including asking for consent to search; Werner denied consent to search. Sergeant Hill and Trooper Pilon both agreed that based upon the totality of the investigation, Werner most likely had a large quantity of U.S. currency and then they commenced to a probable cause search of the vehicle.

16. During the search of the vehicle Trooper Pilon located a suitcase which had two duffle bags inside of it; one duffle bag was blue and the other was red. The red duffle bag contained a large amount of U.S. currency and several bundles of the currency were rubber banded together. The blue duffle bag contained a small amount of marijuana flower residue, possibly indicating this was not Werner's first trip smuggling marijuana. Two receipts were located in the vehicle. One receipt was for fuel from the Lakeview "Shell", dated July 29th, 2020, for 12.993 gallons of fuel, and the other was a Walmart receipt from Bellevue, Nebraska, dated July 28, 2020 at 10:25:56, for four (4) items: "Teddy Graham", "Pnt Hny Rst", "Powerade", and "Doritos" – they all appear to be snack food items.

17. Law enforcement seized $19,000 in U.S. currency; eight (8) tan rubber bands which held the seized currency; a cell phone and receipts. In my experience, rubber-banded currency is not consistent with disbursements of currency by financial institutions and is more consistent with how I have seen bulk currency when it is involved with bulk cash smuggling.

18. Werner was advised of his Miranda Rights at about 12:57 p.m., by Sergeant Hill. Werner expressed interest in cooperating in the investigation. Werner, Sergeant Hill, and Trooper Pilon went back to the Oregon State Police Lakeview Worksite for further investigation.

19. Sergeant Hill contacted OSP HIDTA Interdiction Taskforce (HIT) Detective Cliff Hargis to assist with the investigation. When Detective Hargis arrived at the office, Werner was seated at a table, was handcuffed, and had a bottle of water. Werner gave written consent to have the data extracted from his Apple iPhone cellular phone for the investigation, which was accomplished by Detective Hargis and then returned to Werner.

20. During a recorded interview Werner admitted to the following in summary:

- There was $19,000 in the vehicle and it was all Werner's. The currency was derived entirely from illegal marijuana sales. Werner counted and rubber-banded the currency.
- Werner was meeting a contact in Central Point at a house; he produced his source of supply in Oregon's phone number: 808-269-3992 but did not know his name.
- Werner was going to pay $1,200-$1,600 per pound of bulk marijuana for about ten (10) pounds.
- This was Werner's fifth (5th) or sixth (6th) trip. This was his first trip to Oregon; he normally goes to Colorado.
- Werner admitted he sells the marijuana in Nebraska, giving prices such as: one (1) ounce for about $200, one-quarter pound for about $600-$800, one-half pound for $1,200-$1,400 and a full pound for $2,000-$2,200.
- Werner said he works for himself.
- For legitimate employment, Werner installs "lighting rods" and made about $20,000-$25,000 in 2019 and about the same in 2018.
- Werner admitted his house in Nebraska had packaging material.
- Werner wished to cooperate but did not wish to perform a controlled delivery.

21. At the conclusion of the interview, Sergeant Hill, who is also a HSI Medford TFO presented Mr. Werner with an DHS form 4607, Notice of Abandonment and Assent to Forfeiture of Prohibited or Seized Merchandise. Werner did not claim ownership of the money and signed the HSI Notice of Abandonment form No. 4607 agreeing to abandon the drug proceeds.

22. Werner was cited and released with a future court date for an Oregon drug charge in violation of ORS 475B.346 - Delivery of Marijuana Over 8 LBS Usable in Public Place or Household. Additionally, Werner was provided a copy of the evidence form showing the items seized from him.

23. Detective Hargis contacted Drug Enforcement Administration DEA Group 2 Commercial Interdiction Unit (CIU) Task Force Sergeant Tom Meola in Nebraska and provided them the information regarding Werner's arrest. This information was relayed to DEA Task Force Officer Jarrod Wineinger. TFO Wineinger reported he obtained utilities information at Werner's address located on Parkside in Bellevue, Nebraska, in a female's name: Elayna Werner. Further checks by TFO Wineinger found she was previously married to Brendan Werner; they had divorced and were not married as of July 30, 2020. TFO Wineinger located an address where Brendan Werner was the utilities subscriber located 9513 S. 26th Street, Bellevue, Nebraska, which was different from his listed address on his driver's license. A search warrant for narcotics was sought by TFO Wineinger through the Douglas County District Court (Nebraska) for the 9513 S. 26th Street residence.

24. The search warrant at 9513 S. 26th Street, Bellevue, Nebraska, was served on July 31 at about 1030 hours by members of the DEA CIU; no one was at the residence upon service. TFO Wineinger's report reflected a search of the residence revealed the following items that are consistent with the possession and distribution of narcotics: vacuum-sealed bundles of marijuana

in the master bedroom closet, suspected psilocybin, suspected lysergic acid diethylamide (LSD), functioning digital scales and other marijuana-related marijuana paraphernalia. Contrary to Nebraska law, TFO Wineinger was not able to locate a Nebraska Drug Tax Stamp on any of the drug packaging. Agents seized 540 grams of marijuana, 240 grams of suspected psilocybin mushrooms, and 52 dosage units of LSD in addition to the scales, drug paraphernalia. Seized items were booked into evidence at the Douglas County Sheriff's Office (Nebraska).

25. TFO Wineinger referred Nebraska drug charges to the Sarpy County Attorney's Office (Nebraska). In preparation for this declaration, I contacted the Sarpy County Attorney's Office on March 2, 2021.  They informed me that Brendan Werner was currently in warrant status since August 2020 stemming from his Nebraska conduct; he was wanted for Nebraska drug offenses: Possession of Marijuana – Greater Than One Pound; Failure to Affix Drug Tax Stamp; Possession of a Controlled Substance – LSD; and Possession of a Controlled Substance – Psilocybin.

26. Detective Hargis relayed to me that Lake County District Attorney Ted Martin dismissed the criminal case when he was made aware that Werner disclaimed the currency as drug proceeds.

27. Based on the above, and my training and investigative experience, I have probable cause to believe that the $19,000 in U.S. Currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), as it constitutes moneys intended to be furnished by any person in exchange for a controlled substance or the proceeds traceable to an exchange of controlled substance in violation of 21 U.S.C. § 841, specifically marijuana, a schedule I controlled substance, or moneys used or intended to be used to facilitate any violation of 21 U.S.C. § 841(a)(1), specifically the manufacture and distribution of marijuana.

**Declaration of Jed Rzegocki**                                                                                     **Page 10**

I declare under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. § 1746.

Executed this 15th day of March 2021.

*s/Jed Rzegocki*
Jed Rzegocki
Task Force Officer
Homeland Security Investigations
Detective-Oregon State Police
