IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:21-cv-00434-CL |
| Plaintiff, | |
| v. | ORDER |
| $19,000.00 U.S. CURRENCY, in rem, | |
| Defendant. | |

CLARKE, Magistrate Judge

Plaintiff, United States of America ("the Government'), brings this complaint *in rem* for forfeiture, alleging that this $19,000.00 U.S. Currency represents proceeds traceable to an exchange of controlled substances or were used or intended to be used to facilitate such a transaction in violation of 21 USC § 841(a)(1), and is forfeitable to the United States pursuant to the provisions of 21 USC § 881(a)(6).

The case comes before the Court on a motion to dismiss the forfeiture complaint, filed by Claimant Brendan M. Werner (#16). Claimant also moves to suppress the seizure of the res and the statements of the Claimant (#17). On August 18, 2022, the Court held an evidentiary hearing on the motions above. On August 19, 2022, full consent to magistrate jurisdiction was entered. (#43). For the reasons below, Claimant's motions (##16, 17) are DENIED.

## FACTS

After holding an evidentiary hearing, the Court finds that the following facts are not in dispute. On Wednesday, July 29, 2020, Claimant Brenden Werner was driving a rental vehicle, a grey 2019 Hyundai SUV with Missouri license plate LB7L5Y, from Nebraska to Oregon. Shortly after noon that day, Claimant was driving in Lake County, Oregon on Highway 140 near mile post 87. There, Oregon State Trooper Brennan Pilon saw Claimant's vehicle cross the white fog line on the side of the highway; the driver appeared to be looking down at something. Trooper Pilon then initiated a stop by activating his lights and pulling the vehicle over. Trooper Pilon confirmed that Claimant had been looking down at his GPS, causing him to cross the fog line. Trooper Pilon asked to see Claimant's driver's license, rental agreement for the car, and proof of insurance. Claimant handed over his Nebraska driver's license and the rental agreement, but he did not have his proof of insurance immediately at hand.

The rental agreement showed that the vehicle was rented the day before, July 28, and was due back in Nebraska on July 31 at 11:00AM. Trooper Pilon noted the very quick turnaround for such a long drive. While Claimant was searching for proof of insurance, he told Trooper Pilon that he was driving from Nebraska to Medford, Oregon, and he said he was traveling to see family. Trooper Pilon noted Claimant's nervous demeanor, including no eye contact, and looking down at his phone a lot. When asked if he knew the address he was heading to in Medford, Claimant initially said "no." Claimant then said that he was headed to Central Point. Trooper Pilon observed a small black suitcase and a blanket and two pillows – it appeared that Claimant had been sleeping in the vehicle, and there were fast food wrappers on the floor.

At this point, Trooper Pilon believed he had reasonable suspicion to escalate this from a traffic stop to a drug interdiction stop. He asked Claimant for consent to search the vehicle, and Claimant said, "no." Trooper Pilon called Sergeant Hill to get advice on his process. Sergeant Hill indicated that he should be present to take any cash if it is confiscated, and he indicated that he would head that direction.

While Claimant looked for the proof of insurance, Trooper Pilon ran the license plate information to match the vehicle to the plates, and he also ran the information on the driver's license for Claimant's driving status. Trooper Pilon noted his license was valid, with no criminal history for drugs. While continuing to wait for Claimant to find his proof of insurance, Trooper Pilon asked him questions about his trip, including the address for his destination. Claimant gave the address 750 East Gregory Road, Central Point. Claimant told him he was going to see friends. Trooper Pilon noted that Claimant kept looking away and looking at the ground, and he believed Claimant was not being truthful. Trooper Pilon then typed the address given into his computer and saw a satellite view of the property, which showed a large marijuana grow at that location. At this time, Trooper Pilon believed he had probable cause that Claimant was driving from Nebraska to Oregon to purchase a large amount of marijuana; he believed he would find a large amount of currency in the vehicle.

Sergeant Hill then arrived and spoke to Claimant, asking him to step out of the vehicle. They proceeded to search the vehicle and found $19,000.00 U.S. currency in a bag in the back of the vehicle. The bag also contained marijuana residue. Sergeant Hill indicated to Claimant that if he was willing to cooperate, they could convoy back to the office and answer questions from the drug investigator. Claimant agreed. Neither Trooper Pilon nor Sergeant Hill gave Claimant a citation for the traffic infraction of crossing the fog line.

## LEGAL STANDARDS

### I. Initiating and prolonging a traffic stop.

A person may be stopped by police for a traffic violation and the "tolerable duration" of such a stop "is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (internal citation omitted). "Authority for the seizure thus ends when tasks tied to the traffic violation are—or reasonably should have been—completed." *Id.* Such tasks include "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance," as well as "certain negligibly burdensome precautions" related to officer safety. *Id.* at 354-355.

An officer may conduct unrelated inquiries during an otherwise lawful stop, but "he may not do so in a way that prolongs the stop absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Id.* at 357-358. Put another way, "an officer may prolong a traffic stop if the prolongation itself is supported by independent reasonable suspicion." *United States v. Evans*, 786 F.3d 779, 788 (9th Cir. 2015). "Reasonable suspicion 'exists when an officer is aware of specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for particularized suspicion.'" *Id.* (quoting *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (en banc).

### II. Searching a vehicle.

The Fourth Amendment of the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Accordingly, searches typically must be conducted pursuant to a warrant issued by an independent judicial officer. *California v. Carney*, 471 U.S. 386, 390, 105

S.Ct. 2066, 85 L.Ed.2d 406 (1985). However, there are exceptions to this general rule, including the "automobile exception," under which a warrantless search of a vehicle is permitted "if there is probable cause to believe that the vehicle contains evidence of a crime." *United States v. Brooks*, 610 F.3d 1186, 1193 (9th Cir. 2010). Probable cause exists if there is a "fair probability that contraband or evidence of a crime will be found in a particular place," under the totality of the circumstances. *United States v. Rodriguez*, 869 F.2d 479, 484 (9th Cir. 1989) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). "A finding of probable cause must be supported by the objective facts known to the officer at the time of the search." *United States v. Rodgers*, 656 F.3d 1023, 1029 (9th Cir. 2011).

### III.    Oregon law and the automobile exception.

The Oregon Supreme Court has recently re-examined and overruled the *per se* automobile exception to the warrant requirement under Oregon law. *State v. McCarthy*, 369 Or. 129, 177, 501 P.3d 478, 506 (2021). Now, "in order to justify a warrantless seizure or search of a vehicle based on exigent circumstances, the state must prove that exigent circumstances actually existed at the time of the seizure or the search. *Id.* To prove that such an exigency existed, the state must prove that it could not obtain a warrant through reasonable steps, which include utilizing available processes for electronic warrants. *Id.* Officers "cannot create exigent circumstances by [their] own inaction." *Matsen/Wilson*, 287 Or. at 587, 601 P.2d 784 (internal quotation marks omitted); *see also id.* ("The police cannot weave together a web of information, then claim exigent circumstances when the suspect arrives and can conveniently be snared."). "Similarly, law enforcement agencies and courts cannot create exigent circumstances by failing to take reasonable steps to develop warrant processes that protect against the invasion of the

rights of a citizen that results from an unnecessarily cumbersome warrant process. *Id.* (internal quotations omitted).

## DISCUSSION

### I.   Trooper Pilon had reasonable suspicion to initiate and prolong the stop.

Trooper Pilon credibly testified that he saw Claimant cross the white fog line while looking down at something in the car. The Court therefore concludes that Trooper Pilon validly stopped Claimant for a traffic violation. The prolongation of the stop was justified by Claimant's search for his proof of insurance. All further inquiries took place while Trooper Pilon waited for Claimant to find this necessary documentation.

The prolongation of the stop was independently justified by Trooper Pilon's reasonable suspicion that Claimant was driving to Oregon to illegally purchase marijuana. The extremely short vehicle rental agreement, and the observed evidence that Claimant was sleeping and eating in the car are all specific, articulable facts supporting reasonable suspicion. Trooper Pilon credibly testified that Highway 140 is a high intensity drug corridor known specifically for large quantities of marijuana being exported out of Oregon to states where marijuana is illegal and worth more money than it is in Oregon. Trooper Pilon also knew that drug smugglers will sleep in their vehicles to save time and money by pulling off the road and sleeping for a few hours. His training and experience further indicted that drug smugglers will often use small suitcases, backpacks, and duffle bags to conceal large amounts of US currency. These objective and reasonable inferences, combined with the specific, articulable facts Trooper Pilon observed during the stop, formed the basis for particularized suspicion.

### II.   Trooper Pilon lawfully searched the vehicle under the automobile exception to the warrant requirement, which requires probable cause.

Trooper Pilon's particularized reasonable suspicion, identified above, transformed the traffic stop into a drug interdiction stop. This led Trooper Pilon to continue to ask questions about Claimant's destination and the purpose of his travel. Claimant's nervousness and changing story – first he was travelling to visit family, then friends, first he was travelling to Medford, then to Central Point – contributed to Trooper Pilon's increasing suspicion that Claimant was traveling to buy drugs. When Trooper Pilon ran the address for Claimant's destination and observed a large marijuana grow at the location in Central Point, he then had probable cause to search the car for a large amount of currency. Therefore, under the automobile exception to the warrant requirement, the search of Claimant's vehicle was lawful under the Fourth Amendment.

### III.    The warrantless search was also lawful under Oregon law.

First, this case is brought in federal court, therefore, the parties agree that the Court is not required to apply Oregon law to this case. Second, even if Trooper Pilon were required to show actualized exigent circumstances, as required by *McCarthy*, he can do so.

In *McCarthy*, the evidence before the trial court was that the stop occurred on a Monday afternoon. Multiple officers were at the scene and each of them used a telephone during the stop to communicate with others who were not present. *Id.* at 178. The truck was legally parked in a parking lot, and the defendant was in custody. *Id.* The trial court concluded that the state had failed to show that there was an exigency. *Id.* The court explained that the "state presented no evidence that anyone would move the automobile from the scene while the police sought judicial authorization for the search." *Id.* The court also explained that the state's witness had failed to "adequately explain why the police could not observe the vehicle during the period of time needed to obtain a warrant and seize the vehicle only if there was an attempt to move the vehicle." *Id.* And, the court explained that the state had failed to prove that it could not have

Page 7 -- ORDER

obtained a warrant, commenting that it was "unreasonable under the circumstances in this case that no one even considered the idea of calling a judge from the site of the traffic stop to seek judicial authorization." *Id.* The Oregon Supreme Court therefore determined that the trial court correctly granted the motion to suppress. *Id.*

In this case, Trooper Pilon and Sergeant Hall both had and used a telephone at the scene of the stop, which occurred at midday on a Wednesday. However, unlike the circumstances in *McCarthy*, the vehicle here was not "parked" or immobile, and the suspect was not in custody. Instead, the vehicle was mobile and being driven by the suspect, who had a short timeline to drive it back to Nebraska, according to the rental agreement. If Trooper Pilon released Claimant in order to go procure a warrant, he could have safely assumed that Claimant would have left the scene and continued on his way to Central Point, disposing of the funds and destroying the evidence. Therefore, exigent circumstances existed for Trooper Pilon to search the vehicle without a warrant, but with probable cause.

## ORDER

The initial stop, the prolonged stop, and the search of the vehicle was lawful under federal law and Oregon law. Therefore, Claimant's Motion to Dismiss and return the res (#16), and his Motion to Suppress (#17), are DENIED.

It is so ORDERED and DATED this ___30___ day of May, 2023.

_____
MARK D. CLARKE
United States Magistrate Judge